UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DIANNA C. WALKER                                                      PLAINTIFF

v.                              CASE NO. 3:08CV00131 BSM

ARKANSAS DEPARTMENT OF
COMMUNITY CORRECTION and
DAVID EBERHARD, In His Official
Capacity as Director, Arkansas
Department of Community Correction                                   DEFENDANTS

<u>ORDER</u>

Plaintiff Dianna C. Walker has brought retaliation and sex discrimination claims

under Title VII of the Civil Rights Act of 1964 against her former employer Arkansas

Department of Community Correction (ADCC) and its present director, David Eberhard.

Defendants move for summary judgment [Doc. No. 46] and Walker objects. [Doc. No. 58].

For the reasons set forth below, defendants' motion for summary judgment is granted.

I. FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Walker, the nonmoving party, the

facts are as follows. Walker is a black female who was hired by ADCC as a residential

supervisor-I at its Osceola, Arkansas facility on May 7, 2007, and was terminated on January

3, 2008. ADCC is a state agency that manages community correction facilities and services,

executes orders of state criminal courts, and supervises and rehabilitates adult offenders.

When hired, Walker was informed that she was an at-will employee and that she was being

placed on one-year's probation per ADCC policy. ADCC places its new employees on

probation for one year to ensure that they are sufficiently suited for their positions.

During her eight months with ADCC, Walker received several reprimands. Her supervisor, Lieutenant Liz Johnson, ordered her to change uniform pants because her pants were too tight. Johnson also filed a grievance against her based on a resident's complaint. On another occasion, Walker was required to attend a conference with her second-level supervisor, Captain Ronnie Hill, to discuss a resident's report that she suggested that Captain Hill and Johnson were engaged in a sexual relationship. At that conference, she became very embarrassed and uncomfortable when Captain Hill raised his voice and hit his desk and told her to say nothing about the conference.

After the conference with Captain Hill, Walker spoke with the assistant warden, who told her to keep her documents in her car and that he would advise the warden as to the situation. The record indicates that these documents included statements from several residents. Shortly thereafter, Johnson confiscated one of these statements and told Walker that, per Captain Hill's instructions, Walker was not to take a lunch break until she released one of the other statements.

Further, during her time with ADCC, Walker's shift assignment constantly changed. This caused her to have problems reporting to work because she had difficulty finding someone to care for her children on short notice.

In November 2007, Walker and three other ADCC employees sent an anonymous letter to Governor Mike Beebe and ADCC Internal Affairs. This letter is not in the record,

but based on the undisputed statements of the parties, it was unsigned and did not indicate who authored it, but it referred to Walker's disputes with Johnson and alleged that there were discriminatory employment practices at the Osceola facility.

Shortly thereafter, Captain Hill verbally warned Walker because she disconnected her home telephone. Captain Hill also denied Walker's request to take leave in connection with her father-in-law's death. Walker was also excluded from a counseling session for all probationary employees.

On January 3, 2008, Walker met with Warden Dave Johnson who informed her that she was being terminated due to excessive tardiness, excessive use of leave, and multiple failures to swipe her badge upon reporting for work. The Warden's decision came after receiving a report that stated that, between the time she was hired on May 7, 2007, and December 22, 2007, Walker used 172.75 hours of leave time. This is the equivalent of 21.5 days off in her first seven months on the job. The report further showed that Walker swiped in (clocked in) to work late 28 times between September 16, 2007, and December 22, 2007. It also showed that, on seven occasions, Walker failed to swipe her badge at all upon arriving or departing work. On three of those occasions, Walker failed to submit the required paperwork indicating that she failed to swipe her card.

Walker filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on February 13, 2008, alleging she was terminated in retaliation for sending the anonymous letter to Governor Beebe and the ADCC Department of Internal

Affairs. The EEOC issued a right-to-sue letter on May 23, 2008, and Walker timely filed her complaint on August 19, 2008 and amended it on April 1, 2010.

Defendants move for summary judgment arguing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law because (1) Walker has not established a *prima facie* case of retaliation; (2) even if Walker has established a *prima facie* case, she has presented no evidence creating a question of fact as to whether the defendants' stated nondiscriminatory reasons for terminating Walker were pretextual; and (3) Walker's sex discrimination claim is barred because she failed to file a charge of sex discrimination with the EEOC and therefore has failed to exhaust her administrative remedies.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to

support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates the absence of a genuine and material factual dispute, the nonmoving party may not rest upon the mere allegations or denials of her pleadings, but her response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a nonmoving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir.

5

1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Summary judgment is appropriate on Walker's retaliation claim because, although she has stated a *prima facie* case of retaliation, she has failed to carry her burden of showing that defendants' proffered explanations for her termination were pretextual. Summary judgment is appropriate on Walker's sex discrimination claim because she failed to exhaust her administrative remedies on that claim. Therefore summary judgment is granted and her claims are dismissed with prejudice.

A.    Retaliation

The retaliation provision of Title VII, section 704(a), provides, in pertinent part

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .  because [s]he has opposed any practice made an unlawful employment practice by this [Title] . . . ." 42 U.S.C. § 2000e-3(a) (2006).

The familiar *McDonnell Douglas*, burden-shifting analysis is applied to retaliation cases. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980). This analysis first requires the plaintiff to make out a *prima facie* case of retaliation, by showing that: (1) plaintiff

engaged in a statutorily protected activity; (2) plaintiff received an adverse employment action; and (3) there was a causal relationship between the two. *Id.* If the plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant provides a legitimate nondiscriminatory reason for the adverse employment action, the burden of production then shifts back to the plaintiff to show that the reason proffered by the defendant is merely pretextual and that the defendant's actual motive was retaliation. *Id.* The burden of persuasion remains with the plaintiff throughout, and she must prove her case by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517-19 (1993).

Defendants forcefully argue that there is not a genuine issue of material fact in dispute as to whether Walker has established a *prima facie* case on her retaliation claim because nothing in the record indicates that there was a causal connection between Walker engaging in a protected activity and her termination. They also argue that even if she could establish a *prima facie* case, summary judgment is appropriate because defendants had legitimate nondiscriminatory reasons for terminating Walker and that she has not shown that those reasons were merely pretextual.

Summary judgment is appropriate because, although Walker has established a *prima facie* case, she has failed to show that defendants' legitimate nondiscriminatory reasons for terminating her were pretextual.

*1. The Prima Facie Case*

In an action for retaliation under Title VII, the plaintiff must show that she (1) engaged in a statutorily protected activity, (2) suffered an adverse employment action, and (3) that her employer took that adverse action because she engaged in the protected activity. *Womack*, 619 F.2d at 1296. There is no dispute that Walker satisfied the first two elements. Defendants argue, however, that she cannot establish a genuine issue of fact as to the third element; specifically that she has not produced sufficient evidence for a jury to find the requisite causal relationship between her termination and the anonymous letter she sent complaining of discriminatory employment practices. Although the evidence put forth by Walker on the issue of causation is not strong, it is enough to survive summary judgment.

a.      Protected activity

To begin, there is little dispute that Walker engaged in protected activity when she sent the anonymous letter to Governor Beebe and the ADCC Department of Internal Affairs. Although the letter is not in the record, there is considerable testimony that it alleged  race and sex discrimination at the Osceola facility. Therefore, Walker reported and opposed practices made unlawful by Title VII and is entitled to protection against retaliation.

b.      Adverse employment action

Walker was fired on January 3, 2008, and therefore suffered an adverse employment action.

c.    Causal relationship

The difficult question is whether Walker's termination was caused by her penning the anonymous letter. In that there is no direct evidence of a causal relationship between her termination and the letter, she must show causation through circumstantial evidence. In order to circumstantially prove the causal link between the letter and her termination, Walker must first show that the Warden was aware that she wrote the letter. The Eighth Circuit has held that this knowledge may be actual or constructive. *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1143 (8th Cir. 2008).

Defendants argue that nothing in the record indicates that the Warden had actual or constructive knowledge that Walker wrote the letter.  In support of this position, they offer the Warden's affidavit which states that he had no idea that Walker had anything to do with the letter and that he terminated her for violating ADCC policy. They also submit the affidavit of Rebecca Whitaker, the Unit Personnel Officer at the Osceola facility, who prepared the report upon which the Warden relied in terminating Walker, which similarly states hat she did not know of Walker's letter at any time prior to her termination.

In response, Walker relies on a number of things. First, Janiece Kelley, an officer at the Osceola facility, provided an affidavit in which she states that the Warden held a meeting at the moment that Walker was being escorted out of the facility following her termination, in which he told his lieutenants "if I go, other people will go." According to Kelley, this statement was made in reference to the investigation regarding the complaints in Walker's

anonymous letter. Second, Diana McCullar, another officer at the Osceola facility, provided an affidavit in which she states that everyone at the facility knew that Walker was the one who sent the letter. Third, Walker points out that Captain Hill ordered Whitaker to prepare the document upon which the Warden relied in terminating Walker, within several weeks of the time that Walker sent the anonymous letter to the governor.

Despite defendants' strong arguments to the contrary, when all of the evidence is viewed in the light most favorable to Walker, it must be determined that this evidence could cause a reasonable juror to find that the Warden had knowledge that Walker participated in the writing of the anonymous letter. Kelley's testimony regarding the Warden's statements to his lieutenants could lead a reasonable juror to believe that the Warden knew that Walker wrote the anonymous letter and that her termination would bring further investigations. Although McCullar's testimony is not particularly strong because it lacks detail, at the summary judgment stage, the trial court does not engage in weighing the evidence but is limited to determining whether there is evidence. Finally, the temporal proximity between Walker's anonymous letter and Captain Hill's request for a report on Walker could raise an inference that he knew she wrote the anonymous letter and passed that information on to the Warden.

### 2. Defendants' Legitimate, Nondiscriminatory Reason

Because Walker survives summary judgment on her *prima facie* case, the analysis now turns to defendants' proffered reason for terminating Walker. In this stage of the

*McDonnell Douglas* framework, the burden shifts to defendants to produce a legitimate, nondiscriminatory reason for firing Walker. *See Texas Dept' of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981). To meet its burden, defendants maintain that Walker was fired for abusive usage of leave, numerous instances of tardiness, and several instances of failure to swipe her badge, all of which are violations of ADCC policy.

In support of this argument, defendants submit the affidavit of Rebecca Whitaker, the Unit Personnel Officer at the Osceola facility, who states that sometime in December 2007, she was approached by Captain Hill and asked to prepare a time and attendance report on Walker. On December 19, 2007, she ran a "Time & Attendance - Punch / Clock Detail Report" on Walker for the period from September 16, 2007, through the date of the report. She states that she supplemented the report to include December 20 through 22. Whitaker testified that the report compiled Walker's complete history of swiping her badge when going on and off duty throughout the report period as recorded by the official time clock. Her affidavit further affirms that a copy of the report relied on by defendants is a true and correct copy of the original.

This report, which is in the record, shows that Walker used 52 hours of annual leave, 52 hours of sick leave, 48 hours of holiday leave, 8 hours of "EMBD", 11.75 hours of "comp leave", and 1 hour of leave without pay. This totals 172.75 hours, or 21.5 days, of leave time used from May 7, 2007, through December 22, 2007. According to the report, Walker had exhausted her leave balance and had zero hours of leave available. The report

further indicates that Walker swiped in after her scheduled work time 28 times between September 16, 2007, and December 22, 2007. It also indicates that on seven occasions, Walker failed to swipe her badge upon arriving or leaving. On three of those occasions, Walker apparently failed to submit the required "failed-to-swipe" paperwork. Whitaker submitted the report to Hill on December 22, 2007.

The Warden states that he received a memorandum from Captain Hill on or about December 28, 2007. The memorandum was comprised of a cover sheet and Whitaker's five-page report. According to the Warden, the memorandum recommended and indeed requested Walker's termination "on the grounds of lacking work performance in the area of attendance and dependability." Based on Captain Hill's recommendations and the data compiled in the time report, the Warden concluded that Walker's "leave record, numerous instances of tardiness, and her failure to swipe her badge to record the time she reported for duty on multiple occasions was inconsistent with ADCC policy and warranted termination."

The evidence of Walker's record of excessive leave usage, chronic tardiness, and frequent failures to "swipe-in" clearly satisfies defendants' burden to articulate a legitimate, nondiscriminatory reason for her termination. The burden, therefore, shifts back to Walker to prove, by a preponderance of the evidence, that the reasons for her termination provided by defendants are mere pretext for unlawful retaliation.

### 3. Pretext/Inference of Retaliation

Walker argues that there is a genuine issue of fact in dispute as to whether the

nondiscriminatory reasons for her termination provided by defendants are mere pretext for retaliation. In support of this, she points out that ADCC did not terminate two other employees who did not engage in protected activity, although their workplace history was similar to hers. She also submits the affidavit testimony of Lieutenant McCullar who states that Walker had leave time available when she first learned of her father-in-law's death but several days later did not have any. Walker also produces the affidavit testimony of Lieutenant Kelley who states that the ADCC's personnel manager was "constantly tampering with the employee time clock."

    a.    Similarly situated employees

Pretext can be proved by showing that the employer gave favorable treatment to similarly situated employees who did not engage in protected activities. *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 835 (8th Cir. 2002). The plaintiff, however, is required to show that these comparators "were similarly situated in all relevant respects." *Id.* This burden rests entirely on the plaintiff and the defendant need not demonstrate the dissimilarity of the comparators. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994).

In deciding whether comparators are similarly situated, the totality of the circumstances must be considered. Specifically, the comparators' conduct must be "of comparable seriousness" to that of the plaintiff. *See Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988). Both the frequency and severity of the infractions are relevant. For example, in *Smith v. Allen Health Systems, Inc.*, the plaintiff was discharged for failing to

timely mail tax receipts to donors. 302 F.3d at 831. She made several arguments in an attempt to show that the reason for termination offered by her employer was merely pretext, including her belief that her replacement was not held to the same standard that she was being held. *Id.* at 835. The record, however, indicated that while tax receipts should be mailed within one week of a donation and the replacement had on occasion sent out receipts within two weeks of donations, the plaintiff had failed to send out receipts more than two months after receiving donations. *Id.* The Eighth Circuit held that the replacement was not a valid comparator because a delay of two weeks is not comparable to a delay of two months, particularly when the latter extended over the end of a calendar year when many donors would be preparing tax returns. *Id.*

Plaintiff asserts that ADCC gave preferential treatment to Marvell Carr and Billy Randolph, who were two probationary employees who did not oppose ADCC's discriminatory practices. She maintains that Carr and Randolph were allowed to complete their probationary periods despite having disciplinary issues. Defendants argue, however, that Walker has failed to show that either Carr or Randolph were similarly situated to her in all relevant respects.

Both Carr and Randolph were hired in the same position as Walker. Randolph began his employment shortly before Walker and Carr began his employment several months after Walker. Although they worked for various immediate supervisors depending on their shift and schedule, all three reported to Captain Hill. Thus, Walker, Carr, and Randolph were

14

similarly situated organizationally.

In order to be comparators under Title VII, however, Carr and Randolph must be similarly situated to Walker *in all relevant respects*. Therefore, the question becomes whether the infractions committed by Carr and Randolph were comparable to those committed by Walker. In support of this prong, Walker points to McCullar's affidavit, in which she testified that she was Carr's supervisor during his probationary period. McCullar further stated that Carr was allowed to complete his probationary period despite submitting a fraudulent inmate count, an offense that required immediate termination. Walker also points to Carr's official disciplinary record which shows that Carr received verbal and written warnings for violating ADCC policies and failing to make satisfactory marks in his annual performance evaluation in the areas of professionalism, attendance, and responsibility. Carr's disciplinary record, however, shows that these areas of concern were brought up to satisfactory standards within ninety days.

As to Randolph, Walker points to Kelley's affidavit testimony, in which she testified that she was Randolph's supervisor during his probationary period. Kelley further stated that Randolph was allowed to complete his probation despite having attendance and insubordination problems. Randolph's official disciplinary report, which is in the record, shows that he received a verbal warning for violating ADCC policies and a written warning, plus six additional months of probation for failing to report for work and for insubordination. Randolph's official disciplinary report, however, shows that he was fired

before the end of his probationary period, less than one month after receiving the written warning for failing to report for work.

Noticeably absent from the record is Walker's disciplinary report. Without this report, it is very difficult to determine whether Carr's and Randolph's infractions were comparably serious to hers. Nevertheless, nothing in the record indicates that Carr or Randolph used leave time inappropriately or failed to swipe their badges when reporting to work, similar to Walker. As set forth above, from September 16, 2007, until December 22, 2007, Walker failed to "swipe in" on seven different occasions (and failed to turn in "fail-to-swipe" forms on three of those occasions) and was late for work twenty-eight times. From May 7, 2007, the beginning of her employment, until December 22, 2007, Walker used a total of 172.75 hours of leave time. This equates to over 21.5 work days missed in less than eight months.

For all of these reasons, Walker has failed to show that she, Carr, and Randolph were similarly situated in all relevant aspects. Therefore, even if Carr and Randolph were treated more favorably than Walker, this does not establish a genuine issue of material fact as to whether the defendants' proffered reasons for Walker's termination were in fact mere pretext for retaliation.

    b.    Disappearing leave time

Pretext can also be proved by evidence that creates a reasonable inference of retaliation. Walker argues that McCullar's testimony is precisely such evidence because McCullar testified that she approved leave for Walker sometime after Walker's father-in-

16

law was found dead on January 1, 2008. McCullar testified that several days after she approved Walker's leave, Walker's leave balance changed. McCullar's testimony is offered to contradict the Warden's testimony that he terminated Walker, in part, based on a time report compiled on December 22, 2007, which indicated that Walker had no leave time available and that he communicated the termination to Walker on January 3, 2008.

Although McCullar's testimony indicates that Walker had leave time on January 1, 2008, she does not testify as to whether Walker had leave time on December 22, 2007. For this reason, it is difficult to understand exactly what point McCullar's testimony makes in this regard. Therefore, her testimony does not raise an inference of retaliation.

      c.      Tampering with the employee time clock

Walker also argues that Kelley's testimony that Rebecca Whitaker, the unit personnel manager at the Osceola facility, often "tampered" with the employee time clock gives rise to an inference that Whitaker was purposely manipulating Walker's time records in an effort to provide defendants with a legitimate basis to terminate Walker's employment. Nothing in Kelley's testimony, however, supports the view that Whitaker intentionally tampered with the time clock to negatively effect Walker. Indeed, in her affidavit, Kelley merely states that Whitaker "was constantly tampering with the employee time clock" and that "the time on the clock changed so often until the clock was unreliable." This testimony does not raise an inference of retaliation.

For all of the reasons set forth in this section, summary judgment is appropriate on

17

Walker's retaliation claim because, although Walker has stated a *prima facie* case of retaliation, she has failed  to show that a genuine issue of fact remains as to whether defendants' proffered explanations for her termination were pretextual.

B.    Sex Discrimination

Defendants move for summary judgment on Walker's sex discrimination claim asserting that she failed to exhaust her administrative remedies.  In response, Walker argues that although the EEOC did not investigate this claim, she was discriminated against based on her sex and that she made a good faith effort to exhaust her administrative remedies. Walker failed to file a charge of sex discrimination with the EEOC and therefore cannot overcome defendants' motion for summary judgment on this claim.

To begin, a plaintiff must follow the administrative scheme established by Title VII prior to filing suit in federal court. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). The plaintiff must first file a timely charge of discrimination with the EEOC setting forth the facts and nature of the charge. *Id.* This charge must be "sufficiently precise to identify the parties, and to describe generally the practices complained of." *See* 29 C.F.R. § 1601.12. Once the EEOC has completed its investigation it issues a right-to-sue letter, after which the plaintiff has ninety days in which to file suit. *Williams*, 21 F.3d at 222.

Walker completed her EEOC intake questionnaire on January 28, 2008. Question 4 of the intake form asks: "What is the reason (basis) for your claim of employment discrimination?" Of the nine boxes below that question, Walker checked only the box next

to retaliation. Notably, the examples below the question specifically provide that a complainant can check multiple boxes if the complainant feels they were discriminated against for more than one reason. Furthermore, Walker testified in her deposition that she saw the sex discrimination charge box and declined to check it.

Walker asserts that it is clear that she intended to state a sex discrimination claim in addition to the retaliation claim because she listed only male employees in the comparator section of the questionnaire. A plaintiff can neither expect the EEOC to make such an inference on her behalf, nor can she ask a court to disregard the important screening and notice functions of EEOC charges. *See Williams*, 21 F.3d at 223. Indeed, the Eighth Circuit has held that EEOC charges are more than mere formalities and to hold otherwise "'would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" *Id.* (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985)).

For these reasons, defendants' motion for summary judgment on Walker's sex discrimination claim must be granted.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [Doc. No. 46] is granted and Dianna C. Walker's claims against the Arkansas Department of Community Correction and David Eberhard are dismissed with prejudice.

IT IS SO ORDERED this 27th day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE